Peter BOGAN Plaintiff

v.

**MISSISSIPPI CONFERENCE OF THE UNITED METHODIST CHURCH Defendant**

No. 3:05CV553LN.

United States District Court, S.D. Mississippi, Jackson Division.

May 5, 2006.

Robert Nicholas Norris, Louis H. Watson, Jr., Louis H. Watson, Jr., PA, Jackson, MS, for Plaintiff.

Charles F. Barbour, Joseph E. Lotterhos, Bennett, Lotterhos, Sulser & Wilson, Jackson, MS, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Mississippi Conference of the United Methodist Church (Mississippi Conference) to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Peter Bogan has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, concludes that defendant's motion is well taken and should be granted.

According to his complaint filed on August 5, 2005 in the Circuit Court of Hinds County, Mississippi, plaintiff Peter Bogan, who is black, became employed by defendant Mississippi Conference as a pastor in 1979, and remained so employed until June 2004, when he was put in the position of having to resign after being placed on extended administrative leave without pay. He filed this action claiming race discrimination in violation of Title VII and 42 U.S.C. § 1981 based on allegations that (1) he was placed on administrative leave without pay in March 2004 for not spending the night at the church's parsonage for at least five nights out of the week, while no adverse action has been taken against numerous Caucasian pastors who do not spend the night at their church parsonages five nights of the week, and that (2) he and other African–American pastors employed by defendant have not been promoted to higher paying church positions because of their race, as defendant has "continually only offered churches with majority African–American congregations to its African–American pastors, which on average pay less to their pastors than churches with majority white Caucasian congregations," and that as a result, "[n]umerous

Caucasian pastors with less experience are promoted over African–American pastors with more experience to churches with higher paying salaries."

In light of the federal nature of plaintiff's claims, defendant removed the case, and thereafter filed the present motion to dismiss, contending that it is immune from the claims asserted by plaintiff due to the "ministerial exception," or "minister-clergy exception," to employment discrimination claims, first articulated by the Fifth Circuit in *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.1972).

■ In *McClure,* the Fifth Circuit held that the Free Exercise Clause of the First Amendment[1] precludes courts from intruding into the employment relationship between a church and its ministerial employees. After observing that the First Amendment has built a "high and impregnable" " 'wall of separation' " between church and state, *id.* (citations omitted), the court explained,

> Only in rare instances where a "compelling state interest in the regulation of a subject within the State's constitutional power to regulate" is shown can a court uphold state action which imposes even an "incidental burden" on the free exercise of religion. In this highly sensitive constitutional area " '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation' ". *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Restrictions on the free exercise of religion are allowed only when it is necessary "to prevent grave and immediate

danger to interests which the state may lawfully protect".

*Id.* Characterizing the relationship between an organized church and its ministers as "its lifeblood," the court observed,

> The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church.

*Id.* at 558–59; *id.* at 559 (practice of religious denominations to determine matters dealing with "the very terms of a minister's calling" is "both basic and traditional"). Then, after referencing and discussing a number of Supreme Court cases which collectively expressed " 'a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine[,]' " *id.* at 560 (quoting *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952)),[2] the court concluded that "the application of the provisions of Title VII to the employment relationship existing between ... a church and its minister would result in an encroachment by the State into an area of religious freedom

---

**1.** The First Amendment provides, in part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."

**2.** *See also McClure,* 460 F.2d at 560 (describing succession of cases in which the Supreme

Court had "place[d] matters of church government and administration beyond the purview of civil authorities") (citing, *inter alia, Watson v. Jones,* 80 U.S. 679, 13 Wall. 679, 20 L.Ed. 666 (1871)).

which it is forbidden to enter by the principles of the free exercise clause of the First Amendment." *Id.* The court elaborated on this notion, stating,

An application of the provisions of Title VII to the employment relationship which exists between ... a church and its minister, would involve an investigation and review of these practices and decisions and would, as a result, cause the State to intrude upon matters of church administration and government which have so many times before been proclaimed to be matters of a singular ecclesiastical concern. Control of strictly ecclesiastical matters could easily pass from the church to the State. The church would then be without the power to decide for itself, free from state interference, matters of church administration and government. Moreover, in addition to injecting the State into substantive ecclesiastical matters, an investigation and review of such matters of church administration and government as a minister's salary, his place of assignment and his duty, which involve a person at the heart of any religious organization, could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment. As was said by Justice Clark in *School District of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), "the breach of neutrality that is today a trickling stream may all too soon become a raging torrent * * *".

*Id.*

In response to defendant's motion, plaintiff argues that *McClure's* ministerial exception is no longer valid in the wake of the Supreme Court's subsequent decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), in which the Supreme court specifically rejected the "compelling state interest" test set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), which the Fifth Circuit referenced in *McClure*. The court in *Smith* held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879, 110 S.Ct. at 1600 (citations and internal quotation marks omitted).

Plaintiff notes that although Congress passed the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* (RFRA), in response to the Supreme Court's decision in *Smith* for the stated purpose of restoring the "compelling interest" test of *Sherbert,* the Supreme Court held RFRA to be unconstitutional in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), and returned to the analysis in *Smith.* Plaintiff reasons that in light of *Smith's* rejection of *Sherbert's* "compelling interest" standard, upon which *McClure* relied, it follows that *McClure's* ministerial exception cannot stand.

The problem with this argument, however, is that it has been squarely rejected by the Fifth Circuit. In *Combs v. Central Texas Annual Conference of the United Methodist Church*, the plaintiff questioned whether "*McClure* and its church minister exception still stand in light of the Supreme Court's decision in [*Smith* ]." 173 F.3d 343, 345 (5th Cir.1999). The court concluded that "[the] fundamental right of churches to be free from government interference in their internal management and administration has not been affected by the Supreme Court's decision in *Smith* and the demise of *Sherbert,*" *id.* at 350, and in so holding, stated,

We ... disagree with Reverend Combs's argument that *McClure* is no longer good law because it relied on the "compelling state interest" test rejected by the Supreme Court in *Smith*. Our review of *McClure* reveals that although this Court presented the "compelling state interest" test in its general discussion of First Amendment law, the test is never applied or even mentioned later in the opinion. Thus, it is unclear how much this Court was actually relying on this test. Moreover, even if the *McClure* panel was relying on the *Sherbert* test, we hold that the church-minister exception survives *Sherbert's* demise. As the D.C. Circuit observed in *Catholic University*, the primary doctrinal underpinning of the church-minister exception is not the *Sherbert* test, but the principle that churches must be free "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116, 73 S.Ct. at 154 (cited by this Court in *McClure*, 460 F.2d at 560, and by the D.C. Circuit in *Catholic University*, 83 F.3d at 462).

In his response brief, plaintiff acknowledges *Combs'* holding, and he acknowledges, additionally, that even subsequent to *Combs*, the Fifth Circuit has expanded the ministerial exception to other employees of a religious organization besides ministers where such employees' job responsibilities require them to perform ministerial functions. *See Starkman v. Evans*, 198 F.3d 173 (5th Cir.1999). In essence,

though, he argues that the court in *Combs* came to the wrong conclusion and that this court ought recognize as much. The court is neither persuaded that *Combs* was wrong nor that this court would be free to disregard the Fifth Circuit's decision, even if it were not inclined to agree with it.[3]

■ Plaintiff argues alternatively that "if, in fact, the Religious Freedom Restoration Act was not previously held unconstitutional as it applies to federal law in the *Boerne* case," then this court must apply the RFRA's two-part test which asks (1) whether the claims sought by the Plaintiff are in furtherance of a compelling governmental interest; and (2) whether those claims are the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb–1(b). Plaintiff reasons that pursuant to RFRA, his claim herein is cognizable since the elimination of race discrimination is clearly a compelling government interest and since Title VII and § 1981 are clearly the least restrictive means of furthering that interest.

Defendant submits that plaintiff's reliance on RFRA is irrelevant and misplaced for a number of reasons, including that (1) RFRA has been declared unconstitutional, without any distinction between state and federal laws, *see City of Boerne*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624; (2) RFRA has not been raised in any pleading by either party to this case; and (3) RFRA does not apply to suits between private parties but rather only applies to governmental action, *see* 42 U.S.C. § 2000bb–1.[4]

3. The fact that other circuits (though a minority of them) may have reached a contrary conclusion to *McClure* and *Combs* is of no moment, and thus plaintiff's citation to those cases avails him nothing.

4. This statute provides as follows:
(a) In general. Government shall not substantially burden a person's exercise of reli-

gion if the burden results from a rule of general applicability, except as provided in subsection (b).
(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that the application of the burden to the person -

Finally, it contends that even if the RFRA is relevant, plaintiff's claims do not involve any burden, much less a substantial burden, on his religious practice, which is the relevant inquiry under the RFRA. Defendant's argument is correct on each of these points.

Accordingly, it is ordered that defendant's motion to dismiss is granted.[5]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(c) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

See also 42 U.S.C. § 2000bb(b)(2) (describing one of purposes of RFRA as follows: "to provide a claim or defense to persons whose religious exercise is substantially burdened by government").

5.  Defendant has requested an award of reasonable attorneys' fees and costs because plaintiff's complaint is frivolous and was filed "without substantial justification" in violation of Rule 11 and Mississippi Code Annotated § 11–55–3(a). The court declines this request, except as to costs, which may properly be assessed to plaintiff.